UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 06-204 |
| OMAR TEAGLE, ET AL. | : | |

SURRICK, J.                                                                              OCTOBER 10, 2007

## MEMORANDUM & ORDER

Presently before the Court are Defendants Roland Alburg, Omar Teagle and Donnel Ball's Motions to Suppress Wiretap Evidence Pursuant to 18 U.S.C. §§ 2215 and 2218, and the Fourth Amendment to the United States Constitution or Alternatively for an Evidentiary Hearing (Doc. No. 95, 96 and 100). A Suppression Hearing was held on September 10, 2007 regarding intercepted wire communications. For the following reasons, Defendants' Motions will be denied.

**I.     BACKGROUND**

Defendants Omar Teagle, Donnel Ball, Ramon Alburg and Roland Alburg are charged, along with two other defendants, with engaging in a criminal conspiracy to distribute cocaine involving a multi-state drug trafficking ring. (Doc. No. 1.)

The investigation that led to Defendants' indictments was initiated by the New York State Police in Rensselear County, New York. (Doc. No. 95, Ex. 1 at ¶ 1-5.) Pursuant to this investigation, the Rensslear County District Attorney's office sought and was granted permission to conduct several wiretaps of suspected participants in the conspiracy. (*Id*. at ¶ 3-4.) The

applications for the Rensslear County wiretaps was supported by an affidavit from Investigator Robert Missenis. (*Id*.) As the Rensslear County investigation yielded more information, it became evident that the targeted drug distribution conspiracy was also operating in Suffolk County, New York. (*Id*. at 4-5.) Upon being contacted by investigators in Rensslear County, law enforcement authorities in Suffolk County initiated their own investigation into the drug trafficking network. (Doc. No. 102 at 7.) On December 22, 2005, the Suffolk County District Attorney's Office, proceeding upon information obtained through wiretaps conducted in the course of the Rensslear County investigation, sought wiretap warrants for several suspects. (*See* Doc. No. 95, Ex. 1.) Suffolk County's motion for these wiretaps was supported by an affidavit from New York State Police Detective Michael Z. Marin, which expressly incorporated the averments in Investigator Missenis's Rensslear County affidavit. (*Id*. at 3.) The Suffolk County wiretap warrants were granted by the Honorable C. Randall Hinrichs of the Suffolk County District Court. (*See* Doc. No. 5, Ex. 5.) The Suffolk County wiretaps yielded further significant evidence that eventually allowed the Suffolk County District Attorney to arrest and charge numerous suspects, including the six defendants in the case before this Court. (Doc. No. 102 at 11-13.) A federal Grand Jury sitting in the Eastern District of Pennsylvania returned indictments against the Defendants in this matter on April 26, 2006, October 4, 2006, and January 10, 2007. (*Id*. at 13.)

      Defendants' motions challenge the admissibility of evidence obtained pursuant to the December 22, 2005 Suffolk County wiretaps. Specifically, Defendants argue that the Marin affidavit was flawed and deficient, and that as a result the Suffolk County District Attorney failed to adequately demonstrate the necessity of the wiretaps as required under Title III of the

Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2518(1)(c) (2000). In the alternative, Defendants seek an evidentiary hearing pursuant to the Supreme Court's decision in *Franks v. Delaware*, 438 U.S. 154 (1978), to investigate the alleged flaws in the Marin affidavit.

The crux of Defendants' argument is that by December 22, 2005, when Investigator Marin made his sworn affidavit in support of the Suffolk County wiretaps, the Suffolk County District Attorney's Office had information at its disposal, obtained via the Rensslear County investigation, that would have allowed it to discover the identity of the Defendants in this case simply by searching the DEA drug trafficking database. (Doc. No. 95-3 at 3.) Specifically, Defendants argue that in December of 2005 the Government was aware of the identity of Norman Goode as a suspect in the drug conspiracy, and that entry of his name in the DEA NADDIS database would have allowed them to determine the identity of the Defendants presently before this Court. (Doc No. 96 at 14.) Defendants therefore maintain that the wiretap was not necessary to achieve the purposes of the Suffolk County investigation. (Doc. No. 95-3 at 3-7.) Defendants further argue that the Marin affidavit contained material misrepresentations that require that this Court either order the suppression of all evidence obtained from the December 22, 2005 wiretap order, or, in the alternative, order an evidentiary hearing to further explore the alleged misrepresentations. (*Id*. at 15-25.)

## II.   LEGAL STANDARD

Our review of the issue of whether the Government's application made a full and complete statement of its need for electronic surveillance is *de novo*. *See United States v. Phillips*, 959 F.2d 1187, 1189 (3d Cir. 1992). However, we defer to the issuing court's determination of whether there was probable cause to grant that application unless we determine

3

that the issuing court abused its discretion. *Id*.

Pursuant to Title III, a wiretap application must abide by a number of requirements:

(1) Each application for an order authorizing or approving the interception of a wire, oral, or electronic communication under this chapter shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such an application. Each application shall include the following information:

(a) the identity of the investigative or law enforcement officer making the application, and the officer authorizing the application;

(b) a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including (i) details as to the particular offense that has been, is being, or is about to be committed, (ii) except as provided in subsection (11), a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted;

(c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;

(d) a statement of the period of time from which the interception is required to be maintained. If the nature of the investigation is such that the authorization for interception should not automatically terminate when the described type of communication has been first obtained, a particular description of facts establishing probable cause to believe that additional communications of the same type will occur thereafter;

(e) a full and complete statement of the facts concerning all pervious applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire, oral, or electronic communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge on each such application; and

(f) where the application is for the extension of an order, a statement setting forth the results thus far obtained from the interception, or a reasonable explanation of the failure to obtain such results.

18 U.S.C. § 2518(1).

Upon receiving a complete application, a judge may issue an *ex parte* order authorizing the wiretap:

if the judge determines on the basis of the facts submitted by the applicant that -

(a) there is probable cause for believe that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;

(b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;

(c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;

(d) except as provided in subsection (11), there is probable cause for belief that the facilities from which, or the place where, the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

18 U.S.C. § 2518(3).

Primarily at issue here is the necessity requirement imposed by Section 2518(3)(c). The Supreme Court has stated that this requirement is imposed in order to ensure that "wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974). However, Title III "does not require the government to exhaust all other investigative procedures before resorting to electronic surveillance." *United States v. Williams*, 124 F.3d 411, 418 (3d Cir. 1997) (Alito, J.); *see also United States v. Vento*, 533 F.2d 838, 849 (3d Cir. 1976) ("Investigators are not obliged to try all theoretically possible approaches."). "[T]he government need only lay a 'factual predicate' sufficient to inform the judge why other methods of investigation are not sufficient"

and its "showing is to be tested in a practical and common sense fashion." *Williams*, 124 F.3d at 418.

## III. DISCUSSION

### A. Necessity

Defendants' argue that the Government could have determined the identities of the Defendants in this case simply by researching the name Norman Goode in the DEA database. Defendants' misconstrue the context in which the Suffolk County District Attorney brought his request for the wiretap orders. The essential inquiry is whether or not traditional investigative techniques would have permitted the investigators to fully accomplish the goals of their investigation. As the Marin affidavit explains, those goals were:

> to determine the individual or individuals illicitly supplying cocaine to John Doe #1, a/k/a "G;" Joe Doe #2, a/k/a "Ock;" John Doe #3, a/k/a Danny;" Norman Goode, a/k/a "Jay;" and their co-conspirators; *to determine the identity of individuals purchasing cocaine from the aforementioned persons*; and to *determine the identity and role of other as yet unknown co-conspirators in this narcotics operation*.

(Doc. No. 95, Ex. 1 at ¶ 20 (emphasis added)). At the time of the wiretap applications, therefore, the investigators were seeking to do more than just identify the Defendants in the present case. It is evident from the Marin affidavit that the Suffolk County District Attorney was trying to ascertain the full scope of the drug trafficking operation and to identify all participants conspiring to operate it. As the Government notes in its brief, "[t]he scope of the objectives of the investigation are critical because they govern the 'necessity' analysis, *i.e.*, whether the normal investigative tools are reasonably likely to succeed in accomplishing the goals of the investigation to uncover the full scope and nature of the conspiracy." (Doc. No. 102 at 21 (citing *United States v. Brone*, 792 F.2d 1504, 1506 (9th Cir. 1986)).) *See also United States v. Jones*,

451 F.Supp.2d 71, 82–83 (D.D.C. 2006).  By interpreting the purpose of the Suffolk County investigation solely through the lens of their own participation in the conspiracy, Defendants misinterpret Title III's necessity requirement.

The Suffolk County District Attorney also provided a clear and sufficient explanation of why other less intrusive investigative methods would not be sufficient to accomplish the stated goals of their investigation.  Confidential informants had already proven unsuccessful, as federal and state law enforcement agents had been attempting to purchase cocaine from Norman Goode for four years at the time the Suffolk County wiretap order issued.  (Doc. No. 95, Ex. 1 at ¶ 26.)  Physical surveillance was unlikely to be effective because it was the understanding of the New York State Police at the time that the members of the conspiracy communicated be cellular phone, and because the one member of the conspiracy whose identity investigators believed they knew, Norman Goode, had multiple residences which would have made it difficult for investigators to determine which location should be surveilled.  (*Id*. at 27-30.)  Similarly, because the investigators did not know who or where to search, seeking physical search warrants would likely prove impossible, because the authorities were unlikely to meet the probable cause standard for obtaining them.  (*Id.* at 31.)  Finally, Grand Jury investigations appeared to be impractical as Goode was the only co-conspirator whose identity was believed to be known, and subpoenaing him for testimony before the Grand Jury would entail the impractical step of granting him immunity.  (*Id*. at 32.)  Grand Jury subpoenas would also presumably reveal the existence of the investigation to others in the conspiracy, thereby potentially undermining the entire purpose of the investigation.  (*Id*.)  Contrary to the Defendants' assertions, the Marin affidavit's discussion of alternative investigative techniques is not "boilerplate." (Doc. No. 95-3

at 21.) Rather, we find that Investigator Marin provided a clear and specific explanation as to why less intrusive alternative investigative techniques had either been unsuccessful, or would likely be unsuccessful or counterproductive, if attempted.

Defendants appear to suggest that the Suffolk County investigators had an obligation to exhaust all less intrusive avenues of investigation before resorting to a wiretap request. (S*ee, e.g.,* Doc. No. 95-3 at 15 ("Investigator Marin failed to exhaust a basic non intrusive tool to meet the state objective of identification").) Such a suggestion is not supported by law. *Williams*, 124 F.3d at 418 ("[Title III] does not require the government to exhaust all other investigative procedures before resorting to electronic surveillance."). Title III was enacted in an effort to strike a balance between the liberty interest in privacy on the part of individuals, and the government's need for tools and flexibility equal to the task of protecting the public safety. *See In re Grand Jury*, 111 F.3d 1066, 1078-79 (3d Cir. 1997). It is indisputable that Title III does not permit law enforcement officials to look to wiretaps as a first step in conducting and investigation. *United States v. McLee*, 436 F.3d 751, 762-63 (7th Cir. 2006). However, as noted above, in this instance, the Marin affidavit makes clear that wiretaps were not the first step, and in fact were resorted to after several other less intrusive means of investigation were either attempted or considered.

Defendants' extensive argument that Suffolk County could have identified them by simply entering the name Norman Goode in the DEA NADDIS database is unpersuasive. Defendants rely heavily on the language of an affidavit filed by FBI agent Brian Turner in support of a search warrant issued in the present matter. (Doc. No. 95, Ex. 2.) The relevant language in that affidavit reads as follows:

> During December 2005, NYSP Investigator Marin learned from his pending investigation that the target, Norman Goode, arranged for the purchase of ten (10) kilograms of cocaine from Ramon Alburg. Subsequent inquiries into DEA database by NYSP Investigator Marin revealed that Ramon Alburg, Roland Alburg and Raoul Alburg are members of a drug trafficking organization that covers the states of New York, New Jersey, Pennsylvania and Maryland.

(Doc. No. 95, Ex. 2 at ¶ 9.)  Defendants argue that this language demonstrates that "all Investigator Marin need do was plug the name Norman Goode into the 'DEA databases' to learn that Ramon Alburg, Roland Alburg and Raoul Alburg were allegedly members of a 'drug trafficking organization that covered the states of New York, New Jersey, Pennsylvania and Maryland.'" (Doc. No. 95-3 at 3.)  The Government responds that Defendants make a "strained reading" of this language, that investigator Marin did run a DEA NADDIS search, and that, at the time the wiretaps were approved, the search yielded no information on the Defendants in the present case.  (Doc. No. 102 at 28.)  Once again, however, the essential question is not whether a search of the NADDIS database might have identified the Defendants in this matter, but whether such a search would have accomplished the overall goals of the investigation.  *See United States v. McGuire*, 307 F.3d 1192, 1198 (9th Cir. 2002) (noting that the Ninth Circuit has "consistently upheld findings of necessity where traditional investigative techniques lead only to apprehension and prosecution of the main conspirators, but not to the apprehension and prosecution of . . . other satellite conspirators.").  Hypothetical arguments about the road not taken are insufficient to establish a violation of Title III.  *See United States v. Harris*, 05-CR-598, 2006 WL 2540779, at *1 n.3 (E.D.Pa. Aug. 30, 2006) (Joyner, J.) ("[c]ourts will not invalidate a wiretap order simply because defense lawyers are able to suggest post factum some investigative techniques(s) that might have been used and were not.") (citing *United States v. Atkins*, 618 F.2d 366, 371 (5th

Cir. 1980).

Finally, Defendants argue that the Suffolk County investigators inappropriately transferred the necessity arguments made in the Missenis affidavit to the Marin affidavit. This argument is also unavailing. A review of the Marin affidavit makes clear that, for the reasons discussed above, the Suffolk County investigators sufficiently argued necessity in their own right. That the Marin affidavit referenced and explicitly incorporated the Missenis affidavit does not mean that the Suffolk County authorities rested on the necessity showing of the Rensslear investigators. It merely shows that the two counties were cooperating in investigating a conspiracy that crossed their jurisdictional borders in a way that permitted the Suffolk County authorities to satisfy the requirements for a Title III wiretap.

After a careful review, we find that the affidavit supporting the Suffolk County motion satisfies Title III's requirement for a full and complete statement of the reasons why a wiretap was necessary, and provide a sufficient explanation as to why other investigative methods would not be sufficient to accomplish the goals of the investigation.

### B. *Franks* Hearing

Defendants also request that this Court order an evidentiary hearing to "determine the full scope of the material misrepresentations and omissions contained within" the Marin affidavit. (Doc. No. 95-3 at 4.) Defendants allege that Investigator Marin made numerous misrepresentations to Judge Hinrichs when seeking the December 22, 2005 wiretap order. Their arguments may be distilled down to three.[1] First, they argue that the Suffolk County authorities

---

[1]Defendants also argue that a *Franks* hearing is warranted because the government "failed to exhaust a basic non intrusive tool to meet the state objective of identification" when, the defendants allege, they failed to run available information through the DEA database prior to

stated in their wiretap application that they did not know the identity of John Doe # 3 when in fact, they allege, they knew he was Daniel R. Green, and further knew his home address. Second, they argue that the Marin affidavit claimed that Daniel R. Green's cellular telephone was a prepaid account, when it was actually a contract account subject to ongoing payment. Third, they claim that Investigator Marin alleged that a separate Suffolk County investigation was underway, but did not cite to evidence to demonstrate the existence of such an investigation.

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that the Fourth Amendment requires an evidentiary hearing to examine the truthfulness of a search warrant affidavit if a defendant makes a substantial preliminary showing that (1) the affidavit contains a material misrepresentation, (2) the affiant made the misrepresentation knowingly and intentionally, or with reckless disregard for the truth, and (3) the allegedly false statement was material to the finding of probable cause. *See Franks*, 438 U.S. at 155-56, 171; *see also United States v. Carter*, 756 F.2d 310, 313 (3d Cir. 1985) (applying the reasoning of *Franks* to arrest warrants); *United States v. Calisto*, 838 F.2d 711, 715-16 (3d Cir. 1988) (adapting the reasoning of *Franks* to material omissions from a warrant affidavit). If such a showing is made, the court may order an evidentiary hearing on the issue of the affiant's veracity. As the Third Circuit has explained, in the context of a *Franks* inquiry, the term "material" is defined as "whether [the

---

seeking wiretap authorization. The Defendants argue that Investigator Marin did not disclose the availability of the DEA database search as available investigative possibility, nor explain why he chose not to undertake one. (Doc. No. 95-3 at 4-5.) The Court notes that the Defendants have not made a substantial preliminary showing that the Suffolk County authorities did not run such a check, nor that the identities of the Defendants could have been revealed, in December 2005, by such a check. More importantly, however, as discussed above, Title III does not impose an exhaustion requirement upon investigators.

misrepresentation in question] mattered regarding the magistrate's probable cause determination." *United States v. Yusuf*, 461 F.3d 374, 389 (3d Cir. 2006). Because the potential for abusive delay and unnecessary discovery is significant, movants must meet a high standard to obtain a *Franks* hearing. Movants must substantially demonstrate that there was both a misrepresentation, and that it was material. *Franks*, 438 U.S. at 156.

Defendants demand for a *Franks* hearing because the Suffolk County authorities allegedly failed to identify Daniel R. Green as John Doe # 3 fails because Defendants have not made a substantial showing either that there was a misrepresentation or that, even if there was, such a representation was material. As to the first point, the Marin Affidavit states as follows:

> It is unknown at this time where John Doe #2, aka Ock, or John Doe #3, aka Danny reside. However, it is believed by your affiant that each operates their cocaine enterprise in Suffolk County, based upon the Rensslear investigation. Also, on November 17, 2005 at approximately 11:05 p.m., a call was intercepted pursuant to the Rensslear investigation, wherein John Doe #3, aka Danny placed a call from landline telephone number (631) 491-3854, to telephone instrument number (646) 346-3658. During this call Danny referred to (631) 491-3854 as his "home number." A review of records from Verizon indicate that telephone instrument (631) 491-3854 is subscribed to by a Daniel R. Green of 7 Nevada Place, North Babylon, Suffolk County, New York.

(Doc. No. 95, Ex. 1 at ¶ 16.) The Government argues that Investigator Marin did not misrepresent the identity of Daniel Green, but rather provided Judge Hinrichs with all of the information the Suffolk County authorities had at the time regarding the identity of John Doe # 3. (Doc. No. 102 at 36-37.) The Government further maintains that the Suffolk County authorities had a strong suspicion that John Doe # 3 was in fact Daniel Green, but stopped short of asserting a positive identification of him before Judge Hinrichs out of an abundance of caution because they felt they still had not obtained sufficient information to make an airtight

determination of his identity. (*Id*.) We conclude that the language quoted above does not demonstrate, on its face, an attempt by the Suffolk County authorities to mislead Judge Hinrichs. Defendants have failed to make a substantial preliminary showing that the Government misrepresented the identity of Daniel Green.

Even if the above statement *were* a misrepresentation or omission, however, Defendants have not made a substantial showing that it would be material. Once again, the key question is whether or not the December 22, 2005 wiretaps were necessary to accomplish the full scope and purpose of the investigation. Defendants have not even alleged, let alone made a substantial showing, that a positive identification of Daniel Green would have rendered the wiretaps unnecessary to uncover the full scope of the cocaine distribution conspiracy and the identities of all participants in it. Having failed to do so, they have not met the high bar erected by *Franks*.

Similarly, Defendants' have failed to make a substantial preliminary showing of materiality with regard to the alleged misrepresentation about the nature of the payment contract for Daniel Green's cellular phone. The Government has conceded that the phone in question was in fact subject to a payment contract and was not on a prepayment. (Doc No. 102 at 36 n.24.) Thus, while the issue of whether or not there was a misstatement is not in dispute, Defendants must still make a substantial showing that this misrepresentation was both knowing or reckless and material. Defendants' do not clearly explain their argument with regard to materiality. It would appear, however, that they base their claim on the assumption that contract accounts for cellular telephones are generally traceable to a home address while prepaid accounts usually are not. If the Government knew that the cellular telephone in question was subject to a contract payment account, rather than a prepayment account that is not traceable to an address,

Defendants imply that they would have positively identified Daniel R. Green, and presumably, therefore, would not have needed to seek the December 22, 2005 wiretaps.[2]  However, once again, Defendants advance no argument – substantial or otherwise – suggesting that an averment by Investigator Marin that cellular telephone (631) 484-9364 was registered to Daniel Green at the 7 Nevada Street address would have substantially altered Judge Hinrichs conclusion that the wiretaps were necessary to permit the government to uncover the full scope and participation of the drug trafficking conspiracy.

Finally, the Defendants assert that Investigator Marin misled the Suffolk County District Court when he failed to affirmatively state the existence of an independent Suffolk County investigation is entirely unavailing.  Defendants' argument on this point is unclear, however, it would appear that they are attempting to assert that the Suffolk County authorities undertook no meaningful investigation on their own, and therefore did not make their own necessity findings.  As discussed above, Investigator Marin and the Suffolk County authorities made a full and

---

[2]Defendant Roland Alburg attaches an exhibit to his motion and asserts the following:
> Annexed hereto and marked as Exhibit 6 is the sprint phone bill which corresponds to the very cell phone claimed to be "prepaid."  It is crystal clear that the phone is not a "prepaid" phone.  The phone records come back to the very same Daniel R. Green at his home address.  The records demonstrate that his cellular telephone is subscribed to Daniel R. Green, 7 Nevada Place, North Babylon, New York.

The Court has examined Exhibit 6, attached to Document 95-3, and it appears to be a Sprint Monthly Invoice Summary sent to a Daniel Green on November 11, 2006, covering a service period from October 8 through November 7, 2006.  However, contrary to Defendant Alburg's assertion in his motion, this account does not bill to 7 Nevada Place, North Babylon, New York, but rather to 150 Wright Street, West Babylon, New York.  The Court is unclear how this invoice is intended to substantially demonstrate that Mr. Green lived at 7 Nevada Place in December, 2005.  If anything, the discrepancy in address might lend further weight to the Government's assertion that Mr. Green's actual residence was not fully known at the time Investigator Marin swore his affidavit.

14

complete statement of necessity including a clear and detailed explanation of the insufficiency of less intrusive, alternative investigative methods. No material issue is raised by the fact that Investigator Marin relied upon and explicitly incorporated information and findings from the Rensslear County investigation into his affidavit. (Doc. No. 95-3, Ex. 1 at ¶ 3.) Defendants make too much of the fact that the particulars of New York law required separate investigations of the same conspiracy to be conducted in Rensslear and Suffolk Counties. The sufficiency of Marin's affidavit speaks for itself. We are satisfied that Judge Hinrichs was fully capable of determining whether a Suffolk County investigation was underway considering the fact that a Suffolk County District Attorney was before him seeking a wiretap.

**C.     Standing**

Finally, the Government raises the question of standing with regard to several of the Defendants seeking to challenge the wiretap orders. (Doc. No. 102 at 14-16.) Judge Hinrichs approved wiretap orders for four telephones on December 22, 2005. (See Doc. No. 95, Ex. 5.) According to the Government, two were for cellular telephones used by an individual identified as John Doe # 1, who was later identified as Roland Alburg; one was for a cellular telephone used by John Doe # 2, later identified as one Billy Green; and the final one was for John Doe # 3, later identified as Daniel Green. (Doc. No. 102 at 14.) Under Title III, only "aggrieved persons" have standing to challenge the admissibility of evidence obtained by means of improper electronic surveillance. *Alderman v. United States*, 394 U.S. 165, 176 (1967). A defendant seeking to challenge the legality of a wiretap must therefore establish that he was either named as a target of the wiretap order, or that his communications were intercepted pursuant to that order. *See In re Harkins*, 624 F.2d 1160, 1105 (3d Cir. 1980). Moreover, those seeking to

challenge the legality of a wiretap order bear the burden of establishing standing to do so at the outset. *United States v. Acosta*, 965 F.2d 1248, 1257 n.9 (3d Cir. 1992).

The Government has challenged the standing of several Defendants with regard to the December 22, 2005 wiretap orders. (Doc. No. 102 at 14-16.) Specifically, the Government argues that none of the Defendants presently before this Court were targeted or intercepted by wiretaps conducted pursuant to the order regarding John Doe # 3, Daniel Green, and therefore all Defendants lack standing to challenge the admissibility of evidence obtained from surveillance of this phone. *Id.* The Government further argues, on the same grounds, that Defendants Teagle, Ball and Ramon Alburg do not have standing to challenge evidence derived from surveillance on the phone used by John Doe # 2, Billy Green, and one of the two phones used by Roland Alburg ((646)-724-9210). *Id.* Defendants did not address the question of standing either at oral argument or by way of additional briefing.

Since we have determined that Defendants' motions to suppress and for and an evidentiary hearing must be denied on the merits, we need not address the standing issue.

Accordingly, Defendants' Motions to Suppress the wiretap communications will be denied.

An appropriate order follows.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 06-204 |
| OMAR TEAGLE, ET AL. | : | |

**ORDER**

AND NOW, this 10<u>th</u> day of October, 2007, upon consideration of Defendants Roland Alburg, Omar Teagle and Donnel Ball's Motions to Suppress Wiretap Evidence Pursuant to 18 U.S.C. §§ 2215 and 2218, and the Fourth Amendment to the United States Constitution or Alternatively for an Evidentiary Hearing (Doc. Nos. 95, 96, 100), and all papers submitted in support thereof and in opposition thereto, it is ORDERED that the Motions are DENIED.

IT IS SO ORDERED.

BY THE COURT:

_____
R. Barclay Surrick, Judge